| DISTRICT COURT, DENVER COUNTY, COLORADO<br>COURT ADDRESS: 1437 BANNOCK STREET<br>DENVER, COLORADO 80202 | DATE FILED<br>August 28, 2025 3:07 PM<br>FILING ID: 3CFECFE48190A<br>CASE NUMBER: 2025CV33112 |
|---|---|
| **Plaintiff:**<br><br>DENVER TRANSIT CONSTRUCTORS, LLC,<br><br>v.<br><br>**Defendant:**<br><br>KELLER NORTH AMERICA f/k/a HAYWARD BAKER INC. | ▲ COURT USE ONLY ▲ |
| John Matthews, #56214<br>Eli E.R. Metz, #32193<br>White and Steele, P.C.<br>Dominion Towers, North Tower<br>600 17th Street, Suite 600N<br>Denver, CO 80202-5406<br>Telephone: 303-296-2828<br>Facsimile: 303-296-3131<br>Email: jmatthews@wsteele.com<br>        emetz@wsteele.com<br>*Attorneys for Plaintiff* | Case No.:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff, Denver Transit Constructors LLC, by and through its counsel, White and Steele P.C., respectfully submits its Complaint, and in support thereof, states as follows:

## PARTIES AND JURISIDICTION

1. Denver Transit Constructors LLC ("DTC") is a Colorado limited liability company with a principal place of business located at 5151 Fox Street, Denver, Colorado 80216.

2. Keller North America f/k/a Hayward Baker Inc. ("Keller" or "Defendant") is corporation with its principal place of business in the United States located in Hanover, Maryland.

3. Defendant has two Colorado offices located at 5775 Eudora Street, Commerce City, Colorado 80022, and 7989 Cherrywood Loop, Kiowa, Colorado 80117.

1

4. This Court has jurisdiction over this matter because Defendant purposefully availed itself of the rights and privileges of the State of Colorado at all times material to this actions, conducts business in the State of Colorado, the events omissions described in this Complaint occurred in the State of Colorado, and the injuries, damages and losses described in the State of Colorado occurred within the state of Colorado.

5. Venue in this Court is proper pursuant to C.R.C.P. 98, because this action relates to construction work performed in Denver County, Colorado.

**GENERAL ALLEGATIONS**

6. This litigation arises out of construction work performed by Defendant at the intersection of York St. and Josephine St. in Denver, Colorado (the "Site").

7. On or about June 23, 2013, DTC and Defendant entered in a contract (the "Prime Contract") whereby Defendant agreed to provide compaction grouting services for DTC.

8. DTC entered into the contract with Defendant because they held themselves out as experts in their fields as opposed to general contractors.

9. Under the Prime Contract Defendant agreed to indemnify and hold harmless DTC for, among other things, from and against, all claims, demands, causes of action, loss, expense, or liability arising from or relating to:

> injury to or death of persons (including the employees of company Owner, Contractor and its subcontractors) or damages to or loss of property (including the property of Contractor, Company, or Owner) arising directly or indirectly out of the acts or omissions to act of Contractor or its subcontractors, or their employees or agents, in the performance of the Work, but excepting were the injury or death of persons or damage to or loss of property was caused by the sole negligence or willful misconduct of the party to be indemnified.

10. On or about August 20, 2018, DTC and Defendant entered into a contract modification of the Prime Contract (the "Modification) (together with the Prime Contract, the "Contract Documents"), to add grouting and compaction work at the Site to stabilize railroad crossing panels.

11. Defendant finished its work at the Site in approximately November 2018.

12. At the time it completed its work, Defendant was aware of the storm drain located near the area where it would be drilling.

13. Subsequently, DTC learned that there was a plugged storm drain (the "Pipe") at the Site.

14. At the time that DTC first learned of the issue with the Pipe, it was not believed that the Defendant's work at the site was the cause of the plugged Pipe.

15. The Pipe was subsequently investigated on or around December 2023, and DTC determined that the Pipe was being blocked by grout which entered the sewer drain due to Defendants negligent construction work at the Site.

16. On December 13, 2023, DTC sent notice to Defendant informing it that its work had caused the sewer drain backup.

17. The December 13, 2023 notice demanded Defendant's cooperation and reimbursement for the costs and damages incurred by DTC as well as indemnification.

18. It was further demanded that Defendant provide a work plan to repair the Pipe.

19. Over the next several months DTC and Defendant exchanged correspondence regarding repairs and damages in an attempt to reach a resolution.

20. Defendant was sent CCTV images depicting the Pipe and other documents to assist in Defendant evaluation of the Pipe.

21. Despite the evidence that Defendant was responsible for the damage to the Pipe and was liable for DTC's damages, Defendant has refused to reimburse or indemnify DTC.

22. Defendant also did not provide any work plan to repair the Pipe.

23. On March 26, 2025, DTC sent additional correspondence to Defendant informing Defendant of upcoming repairs to the Pipe and demanding indemnity pursuant to the Prime Contract.

24. Defendant once again refused to provide DTC with indemnity despite clear contractual requirements.

25. On May 19, 2025, DTC began the process of hydro-jetting the Pipe to remove the grout.

26. The hydro-jetting was successful at removing the grout from the Pipe.

27. Additionally, during the hydro jetting process, an approximately six-inch long section of drill bit was found lodged in the Pipe.

28. This drill bit belonged to Defendant.

29. At no point did Defendant alert DTC that it left a broken piece of drill bit in the Pipe.

30. The fact that a six-inch long piece of drill bit broke in the pipe would have been obvious to Defendant during its work at the Site.

31. A six-inch long piece of drill bit was lodged in a section of the Pipe which clearly impeded the function of the Pipe.

32. Defendant knew that the fact of the drill bit being lodged in the Pipe would have been critical information to DTC as it significantly impacted the functioning of the Pipe.

33. Defendant did not disclose the fact the drill was lodged in the Pipe so that DTC would pay Defendant for its work at the Site.

34. The drill bit being lodged in the Pipe has proximately caused and continues to cause DTC damages.

## FIRST CLAIM FOR RELIEF
**(Negligence)**

35. DTC incorporates herein by reference all allegations made above.

36. Defendant owed a duty to DTC to provide non-negligent construction services and to perform their work and services in a good and workmanlike manner, in accordance with applicable codes, industry standards, and plans and specifications.

37. By causing the Pipe to become filled with grout and by leaving a one foot long piece of drill bit imbedded in the Pipe, Defendant breached its duty to perform non-negligent construction services.

38. This breach of duty by Defendant has proximately caused, and continues to cause, resultant and consequential damage to DTC in amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

39. DTC incorporates herein by reference all allegations made above.

40. DTC entered in the Contract Documents with Defendant for the performance of construction work and related services at the site.

41. Pursuant to the agreements between the parties, express and implied, Defendant was required to perform work of good quality, in a good and workmanlike manner, in accordance with the standards of the industry, and in conformance with the plans and the applicable building codes.

42. DTC substantially performed its obligations under the Contract Documents with Defendant.

43. Defendant has breached the Contract Documents by failing perform construction services at the Site in a good and workmanlike manner.

44. Defendant has further breached the Contract Documents by refusing to indemnify DTC as required by the Contract Documents.

45. Defendant's failure to perform its work within the terms of the Contract Documents has caused damage to DTC in amounts to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Contractual Indemnity)

46. DTC incorporates herein by reference all allegations made above.

47. DTC and Defendant entered into a valid and enforceable contract *i.e.* the Contract Documents, including the Prime Contract.

48. The Prime Contract contains a valid and enforceable indemnity clause which requires Defendant to indemnify and hold harmless DTC for, among other things, from and against, all claims, demands, causes of action, loss, expense, or liability arising from or relating to:

> injury to or death of persons (including the employees of company Owner, Contractor and its subcontractors) or damages to or loss of property (including the property of Contractor, Company, or Owner) arising directly or indirectly out of the acts or omissions to act of Contractor or its subcontractors, or their employees or agents, in the performance of the Work, but excepting were the injury or death of

persons or damage to or loss of property was caused by the sole negligence or willful misconduct of the party to be indemnified.

49. DTC's damages are losses and expenses arising out of Defendant acts and omissions in the performance of its work at the Site.

50. DTC has requested that Defendant indemnify and hold DTC harmless for damages and expenses DTC has suffered as a result of Defendant's work at the Site.

51. Defendant has, however, refused to indemnify and hold harmless DTC.

52. DTC substantially performed its obligations under the Contract Documents and the Prime Contract.

53. DTC has and will continue to suffer damages in the form of costs, expenses, and attorney's fees expended in pursuing its claims against Defendant.

54. Defendant is contractually obligated to indemnify and hold harmless DTC for its costs, expenses, and attorney's fees.

## **FOURTH CLAIM FOR RELIEF**
**(Fraudulent Concealment)**

55. DTC incorporates herein by reference all allegations made above.

56. During hydro-jetting at the Site, which took place on May 19, 2025, an approximately one-foot-long piece of drill was found lodged in the Pipe.

57. This drill bit belonged to Defendant.

58. Defendant chose not to disclose the fact that the drill bit had broken and was lodged in the Pipe to DTC.

59. The fact that a foot long piece of drill bit broke in the pipe would have been obvious to Defendant.

60. The fact that a foot long piece of drill bit was lodged in the Pipe was essentially to the working of the Pipe.

61. Defendant knew that the fact of drill bit being lodged in Pipe was critical information to DTC and was material to the functioning of the Pipe.

62. Defendant did not disclose the fact the drill was lodged in the Pipe so that DTC would pay Defendant for its work at the Site.

63. The drill bit being lodged in the Pipe has proximately caused, and continues to cause, resultant and consequential damage to DTC in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Denver Transit Constructors, LLC prays for judgment in their favor and against Defendant in an amount to be proved at trial, for its actual damages, attorney fees (on such grounds as may exist by contract, statute, or common law, including, but not limited to, the Wrong of Another Doctrine), costs, interest, and other expenses incurred, and for an Order determining that Defendant owes a duty of indemnity to Denver Transit Constructors, LLC, and for all other legal and equitable relief the Court deems appropriate.

## JURY DEMAND

**DENVER TRANSIT CONSTRUCTORS LLC HEREBY DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted this 28th day of August, 2025.

WHITE AND STEELE, P.C.

*/s/ John C. Matthews*
John Matthews, #56214
Eli E.R. Metz, #59291
*Attorneys for Plaintiff*

**Plaintiff's Address:**
1670 Broadway Ste 2700,
Denver, CO 80202